## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**WILLIAM T. BUSICK**                                                          **PLAINTIFF**

**VERSUS**                                            **CIVIL ACTION NO. 3:02CV483LS**

**CITY OF MADISON,** *ET AL.*                                                  **DEFENDANTS**

===============================================================

### MEMORANDUM OPINION AND ORDER

This matter came before the court on the Defendants' Motion for Summary Judgment, as well as several pending Motions filed by the Plaintiff. This is a case in which a prisoner in state custody complains of the conditions of his confinement, and jurisdiction is predicated on 42 U.S.C. § 1983. A Consent to the Exercise of Jurisdiction by United States Magistrate Judge was signed by the parties during the June 6, 2006, Omnibus Hearing, and the case was referred to the undersigned for all proceedings, including the entry of judgment, by District Judge Tom S. Lee on June 13, 2006. Having reviewed the Motion for Summary Judgment and the related pleadings, the court is of the opinion that it should be granted and this case dismissed with prejudice. The undersigned is also of the opinion that the remaining Motions have either become moot or should be denied.

During the litigation of this matter, several claims and parties have been dismissed, and others have been added. The following claims remain in this action and are the subject of this Motion for Summary Judgment:

    1)      Against Defendants Trowbridge, Womack, Thompson, Kiner, Perry, Esco and Cheers -- claims of denial of access to the court, failure to protect, interference with mail, and restriction of his religious freedom.

2)     Against Defendant Neal -- claim of breach of promise of leniency in return for the

Plaintiff's providing information on another crime.

The court has considered these claims as they were presented by the pleadings and further explained

by the Plaintiff's sworn testimony, and he has failed to state a cause of action against these remaining

Defendants.

With regard to his claim that he was denied access to the courts, Busick claims that, during

the time that he was incarcerated at the Madison County Detention Center, he submitted at least forty

requests to use the law library, but was permitted to use it for only thirty minutes on one day of his

incarceration.  He claims that this failure to provide him with adequate legal materials affected his

ability to represent himself in the criminal proceedings pending against him, as well as preventing

his ability to prosecute this case and another case pending in this District.

"[T]he fundamental constitutional right of access to the courts requires prison authorities to

assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with

adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430

U.S. 817, 828 (1977).  This is not an abstract right -- in other words, a prisoner does not make out

a case of denial of access to the court simply by showing that a prison library is inadequate, or even

that he was denied access to it.  *Lewis v. Casey*, 418 U.S. 343, 351 (1996).  Instead, a prisoner

complaining of denial of access to legal materials must show actual injury.  *Id*.  Thus, he must

establish "that his position as a litigant was prejudiced by his denial of access to the courts."

*McDonald v. Steward*, 132 F.3d 225, 230-31 (5th Cir. 1998), quoting *Eason v. Thaler*, 73 F.3d 1322,

1328 (5th Cir. 1996).

2

As the Supreme Court has stated, *Bounds* did not establish that a particular methodology must be used to insure the prisoners have access to the courts; instead, it confers only "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." 518 U.S. at 356. Thus, the states must provide, for the *pro se* inmate, either an adequate law library, **or** adequate legal assistance from persons trained in the law, or a combination of both. *Bounds*, 430 U.S. at 828. Those persons can be attorneys, paralegals, law students or trained inmates, and most states use a combination of trained professionals and quasi-professionals, along with a library. *Id.* at 830-31. Clearly, then, a jail need not provide a law library to persons represented by counsel. Furthermore, a prisoner "who knowingly and voluntarily waives appointed representation by counsel in a criminal proceeding is not entitled to access to a law library." *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir. 1996), citing *United States v. Smith*, 907 F.2d 42, 45 (6th Cir.).

Busick was not entitled to the resources of a law library during his pretrial detention for the purpose of contesting his criminal charges, since appointed counsel was available to him, regardless of whether he chose to use it. With regard to his civil actions in this court, Busick has failed to show actual injury. The time period about which he complains was January 18, 2002, through October 2, 2002. During that period, Busick filed this suit and the other suit referenced in his testimony during the omnibus hearing -- *Busick v. Lamar County, et al.;* 2:02cv90BrS. The docket of this case shows that Busick submitted twenty-seven "pleadings" during that time, including numerous, lengthy "attachments" to his Complaint. The docket of the Lamar County case shows seventeen submissions from Busick. Thus, the court concludes that Busick's claim regarding denial of access to the courts has no merit and should be dismissed.

3

Busick also argues that the Defendants employed by the Madison County Detention Center failed to protect him from assault by other inmates. Prison officials have a duty to protect prisoners from harm from other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). *Id*. at 833. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. The standard for liability is whether the prison official exhibited "deliberate indifference" to the health or safety of the injured inmate. "To find that an official is deliberately indifferent, it must be proven that 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* at 837. Thus, even the Eighth Amendment does not make jailers liable for every incident of inmate-on-inmate violence. *Farmer*, 511 U.S. at 834. Instead, jailers are liable only where they are "subjectively aware" of the risk of serious harm to one inmate by another. *Rodriguez v. Lozano*, 108 Fed. Appx. 823, 828 (5th Cir. 2004).

Here, Busick complains about two incidents -- one involving inmate Eric Van Buren and the other involving inmate Paul Smith. According to Busick's testimony at the Omnibus Hearing, he was housed in a four-man cell, in which each inmate had an individual room with a door that could be locked from the inside, but a common day area. Van Buren was moved into the area after Busick came, allegedly because he had been having problems with other inmates. According to Busick, Van Buren just "exploded" one day and tried to assault him. Busick ran into his cell and closed the door, but Van Buren threw a mixture from his toilet into Busick's cell. Busick described the incident in his sworn testimony as "spontaneous." This incident cannot form the basis of relief under the Eighth

4

Amendment, as officers cannot be charged, in such a circumstance, with knowledge of the risk of serious harm.

With regard to inmate Smith, Busick alleges that he was the agent of the Defendants and was put in his cell in order to spy on him. Although Busick was "suspicious" of him, there is no indication from his testimony that there was a problem between the two. At some point, however, Busick testified that Smith attacked him without provocation, by slamming a door on him. A fight began, that resulted in Busick's being taken to the doctor. After Busick was returned to the cell, he and Smith got into another argument; however, Busick testified at the omnibus hearing that other people in the cell stopped the "fight" after words were said. Following this incident, Smith was removed from the cell. Again Busick has failed to show that the Defendants had the requisite knowledge of the likelihood that he would be seriously harmed by Smith. The first incident appeared to have occurred without warning, and the second incident did not result in a physical altercation. Smith was moved from the cell thereafter. Thus, Busick's claim of a constitutional violation resulting from a failure to protect him from harm is unavailing.

Another complaint made by Busick against the Madison County Defendants is that they interfered with his mail, which Busick characterizes, at least with regard to his correspondence with the court, as "numerous and successive." Nevertheless, he claims that on February 27, 2002, Defendant Kiner dumped five letters back into his cell, telling him that he had used his indigent stamps for the week. On March 27, 2002, Busick claims that a piece of mail from this court was opened prior to his receiving it. On May 10, 2002, he claims that the Detention Center instituted a new policy depriving Busick of "sending as much legal mail as he wished." He also claims that officers made disparaging statements about the amount of mail that he sent and received. Finally,

on August 22, 2002, a letter written to the Plaintiff from the District Attorney who was prosecuting his case was also opened prior to delivery.

Busick makes two separate allegations regarding his mail: (1) that he was not permitted to send as much mail as he wished without paying postage; and (2) that his mail was opened prior to receipt on two occasions. Busick has not cited any authority to the effect that there is a constitutional right to free postage for non-legal mail, and the court is unaware of any authority supporting such a proposition. An indigent prisoner is, of course, entitled to be provided with stamps for the purpose of sending legal mail. *Bounds v. Smith*, 430 U.S. 817, 824-25 (1977). However, where an institution has failed to provide him with postage, a prisoner must show that he was prejudiced by his inability to correspond with the court. *Lewis v. Casey*, 418 U.S. at 351. Busick makes no such allegation, and, indeed, admits that he submitted "numerous" pieces of correspondence to the court during the relevant time, to which the undersigned can readily attest. It does not stretch the imagination to surmise that Busick's repeated, lengthy "amendments" to his Complaints in this and the case against Lamar County could have caused any penal institution to revisit its policy on indigent mail. The court further notes that, on October 11, 2002, shortly after the time period during which these events allegedly occurred, Busick paid a filing fee of $150.00 in this case, thus suggesting that he was not hampered in any sense by "indigency."

Busick also alleges that his mail was opened outside his presence on two occasions. An isolated incident of tampering with a prisoner's mail will not create liability under § 1983 unless it results in legal prejudice to the prisoner. *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1983). Where the prisoner's allegation amounts only to a claim that mail was opened and read outside his presence, there is no constitutional violation. *Walker v. Navarro County Jail*, 4 F.3d 410,

6

413 (5th Cir. 1993). That is precisely the allegation made here, and it occurred only on two occasions -- one in March and the other in August. For all of these reasons, it is the opinion of the undersigned that Busick has not made out a claim cognizable under § 1983 regarding the treatment of his mail.

Busick also contends that the Madison County Defendants interfered with his right to worship. In particular, he states that he had contacted certain ministries seeking religious material early in his incarceration. At some point while he was in the Madison County facility, the policy regarding religious mail was changed, so that material could only be received from one source. According to Busick, the sources he had contacted would have provided free material, including a free Bible, but the source approved by the jail would not send material without charge. For this reason, Busick alleges that he was denied the right to worship privately in his cell.

The Defendants have submitted two affidavits from Major Chuck McNeal, an officer at the Madison County Detention Center. The first affidavit states that the restriction on religious material to that provided by Tyndale Publishing Company was an attempt to prevent contraband from entering the jail. The second affidavit states that all prisoners entering the facility were offered a free New Testament Bible to take to their cells. He also stated that Bible studies were conducted every Sunday by Mr. Louis Jackson, who would visit each cell individually for that purpose. McNeal stated that Jackson handed out Bibles and other religious materials during his visits.

When a prisoner claims that an institutional regulation impinges on his free exercise of religion, the court must review the regulation under the standard set forth in *Turner v. Safley*, 482 U.S. 78 (1987). *Turner* requires the court to consider four guidelines in determining whether any regulation affects fundamental constitutional rights; those guidelines include the whether there is a

7

rational relationship between the regulation and the legitimate government interest advance and whether other alternatives are available for inmates to exercise their religious rights. *Freeman v. Texas Dept. of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004). Here, the court finds a rational relationship between the jail's limiting incoming religious material to one source and preventing contraband. The publisher's name being readily ascertainable on the material would make it easier for officials to determine that the material is bona fide. McNeal's affidavit makes clear, moreover, that inmates have other means of exercising their religious rights, through the New Testament Bibles provided and through the religious services conducted by Mr. Jackson. Thus, alternatives were available to Busick with which to exercise his right to worship.

For all of these reasons, the court finds that the Motion for Summary Judgment should be granted, and this matter should be dismissed with prejudice for failure to state a claim. The Plaintiff's Motion for Leave to Proceed *in Forma Pauperis* that was filed on October 11, 2005, is found to be moot, as the Defendants listed therein were served with process and appeared. The Motion for Requested Interlocutory Appeal filed on May 2, 2006, is also moot, as the Plaintiff took an interlocutory appeal to the Fifth Circuit, which was dismissed for failure to pay the filing fee. The Motions to Enter Supplemental Complaint that were filed on July 25, 2006; September 8, 2006; and February 27, 2007; the Motion to Amend filed on August 29, 2006; and the Motion for Reconsideration filed on December 27, 2006, should also be denied. By these Motions, the Plaintiff continues to seek to add defendants and claims to this matter. Although Busick alleges that these new claims "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," the court rejects that contention. These allegations arose out of acts remote in time and place from those originally alleged, as they occurred years later in a different facility.

There is nothing in the allegations that would convince the undersigned to further delay this case to bring in what amounts to another cause of action.

Furthermore, the court notes that this Plaintiff has had his *in forma pauperis* revoked in another case in this court, on grounds that he has had at least three other cases, in which he was permitted to proceed *in forma pauperis*, dismissed as frivolous, malicious, or failing to state a claim. (While Busick was originally permitted to proceed *in forma pauperis* in this matter, he later paid the filing fee.) The court is of the opinion that permitting these additional claims against new defendants to be added at this point in this litigation would frustrate the intent of the Prison Litigation Reform Act of 1995, 110 Stat. 1321-73, as amended ("PLRA"). The legislative history of the PLRA clearly demonstrates that its purpose was to slow the growth of conditions of confinement cases filed by prisoners. Permitting Busick to combine two or more cases in one, with the payment of only one filing fee, is contrary to that purpose.

IT IS, THEREFORE, ORDERED that the Defendants' Motion for Summary Judgment is hereby **granted**, and this case will be dismissed with prejudice by a separate Final Judgment, in accordance with Fed. R. Civ. P. 58.

IT IS FURTHER ORDERED that the following Motions are hereby **found as moot**:

1.      Motion for Leave to Proceed in Forma Pauperis [95] and

2.      Motion for Requested Interlocutory Appeal [141].

IT IS FINALLY ORDERED that the following Motions are hereby **denied**:

1.      Motion to Enter Supplemental Complaint [165];

2.      Motion to Amend [171];

3.      Motion to Enter Supplemental Complaint [175];

9

4.      Motion for Reconsideration [186]; and

5.      Motion to Amend [191].

IT IS SO ORDERED, this the 19th day of March, 2007.


                                        S/James C. Sumner
                              UNITED STATES MAGISTRATE JUDGE

10